IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Case Number: 1:24-cv-09539

GS HOLISTIC, LLC,

                Plaintiff,

v.

RAW SMOKE & TOBACCO INC d/b/a
RAW SMOKE & TOBACCO and RUTUL
PATEL,
                Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, its Complaint against the Defendants, RAW SMOKE & TOBACCO INC d/b/a RAW SMOKE & TOBACCO and RUTUL PATEL, and alleges, as follows:

### Jurisdictional Allegations

1.     This is a civil action against the Defendants for trademark infringement, counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq*.).

2.     This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and false designation of origin and unfair competition pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

### Venue

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this district, the cause of action occurred in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendants have extensive contacts with this judicial district relating to GS's claims. Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

**Parties**

4. GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036. GS is the registered owner of the "G PEN" logo trademark.

5. RAW SMOKE & TOBACCO INC d/b/a RAW SMOKE & TOBACCO (hereinafter referred to as "RAW SMOKE & TOBACCO") is a that was organized and existing under the laws of the State of Illinois and has its principal place of business at 2335 Bodr Road, Schaumburg, Illinois 60193. RUTUL PATEL owns and operates the RAW SMOKE & TOBACCO at that location. RAW SMOKE & TOBACCO is a citizen of Illinois.

6. RUTUL PATEL is domiciled in and a resident of Cook County, Illinois, and is *sui juris*. RUTUL PATEL is a citizen of Illinois and regularly conducts and solicits business in the State of Illinois (including this Judicial District). RUTUL PATEL is the president and director of, RAW SMOKE & TOBACCO INC d/b/a RAW SMOKE & TOBACCO. RUTUL PATEL controls and directs the activities, including the infringing activities, of Defendant RAW SMOKE & TOBACCO INC d/b/a RAW SMOKE & TOBACCO.

<u>**Facts Common to All Counts**</u>

**The History of The G Pen Brand.**

2

7.      Since 2012, GS has marketed and sold products using the well-known trademark "G Pen."  The G Pen branded products, such as portable vaporizers and accessories related thereto, are widely recognized nationally and internationally.  Indeed, the G Pen brand is one of the leading companies in the industry, known for the high quality of the products at an achievable price point for all.

8.      For approximately ten years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience.  G Pen branded products embody a painstaking attention to detail, which is evident in many facets of authentic G Pen branded products.  It is precisely because of the unyielding quest for quality and unsurpassed innovation that G Pen branded products have a significant following and appreciation amongst consumers in the United States and internationally.

9.      As a result of the continuous and extensive use of the trademark "G PEN," Grenco Science was granted both valid and subsisting federal statutory and common law rights to the G Pen trademark.

10.     GS is the rightful owner of United States trademarks, which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  The following is a list of GS's federally registered trademarks:

        a.      U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010.

        b.      U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010.

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

     c.    U.S. Trademark Registration Number 4,462,090 for the standard character mark "MicroG" in association with goods further identified in the registration in international class 010.

     d.    U.S. Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.

     e.    U.S. Trademark Registration Number 4,616,071 for the standard character mark "Grenco" in association with goods further identified in the registration in international class 010.

     f.    U.S. Trademark Registration Number 4,466,586 for the word mark "G" and its logo in association with goods further identified in the registration in international class 010.

     g.    U.S. Trademark Registration Number 5,264,986 for the standard character mark "G Pen Elite" in association with goods further identified in the registration in international class 034.

     h.    U.S. Trademark Registration Number 5,264,988 for the design plus words mark "G Pen Elite" and its logo in association with goods further identified in the registration in international class 034.

     i.    U.S. Trademark Registration Number 5,368,591 for the standard character mark "G Slim" in association with goods further identified in the registration in international class 010.

     j.    U.S. Trademark Registration Number 5,368,593 for the word mark "G Slim" and its logo in association with goods further identified in the registration in international class 010.

     k.    U.S. Trademark Registration Number 5,363,580 for the word mark "GIO" and its logo in association with goods further identified in the registration in international class 010.

     l.    U.S. Trademark Registration Number 5,363,581 for the standard character mark "GIO" in association with goods further identified in the registration in international

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

class 010.

        m.      U.S. Trademark Registration Number 5,405,360 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

        n.      U.S. Trademark Registration Number 5,405,361 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

        o.      U.S. Trademark Registration Number 5,906,587 for the standard character mark "G Pen Nova" in association with goods further identified in the registration in international class 010.

        p.      U.S. Trademark Registration Number 5,906,588 for the design plus words mark "G Pen Nova" and its logo in association with goods further identified in the registration in international class 010.

        q.      U.S. Trademark Registration Number 6,032,396 for the standard character mark "Roam" in association with goods further identified in the registration in international class 010.

        r.      U.S. Trademark Registration Number 6,032,397 for the design plus words mark "Roam" and its logo in association with goods further identified in the registration in international class 010.

        s.      U.S. Trademark Registration Number 6,202,143 for the standard character mark "G Pen Dash" in association with goods further identified in the registration in international class 010.

        t.      U.S. Trademark Registration Number 6,202,144 for the design plus words mark "Dash" and its logo in association with goods further identified in the registration in international class 010.

11.      The above U.S. registrations are valid, subsisting and in full force and effect. True and correct copies of the Trademark Registrations are attached hereto and marked as Exhibit "A." Hereinafter, GS utilizes the phrase "G Pen Marks" to refer to, collectively, GS's federally registered, above-listed trademarks.

5

**The G Pen Brand in the United States.**

12.    GS has used the G Pen Marks in commerce throughout the United States, continuously, since 2016, in connection with the manufacturing of vaporizing products.

13.    The G Pen Marks are distinctive to both the consuming public and the Plaintiff's trade.  GS's G Pen branded products are made from superior materials.  The superiority of G Pen branded products is not only readily apparent to consumers, but to industry professionals as well.

14.    GS's Trademarks are exclusive to GS and appear clearly on GS's Products, as well as on the packaging and advertisements related to such products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting GS's Trademarks. As a result, products bearing GS's Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

15.    GS's Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Because of these and other factors, the GS brand and GS's Trademarks are famous throughout the United States.

16.    Since 2016, GS has worked to build significant goodwill in the G Pen brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

17.    In fact, GS's Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

18.    Due to the high quality of the brand and products, GS has collaborated with

6

numerous celebrities and companies to create collaborations.

19.     GS sells its products under the G Pen Marks to authorized stores in the United States, including in Illinois.  GS has approximately 5,000 authorized stores in the United States selling its products.  As such, G Pen branded products reach a vast array of consumers throughout the country.

20.     It is because of their higher sales value and recognized quality and innovation associated with the G Pen Marks that consumers are willing to pay higher prices for genuine G Pen branded products and counterfeiters target them.  For example, a G Pen brand vaporizer ranges in price from $70 to $250, while a non-G Pen branded product of equivalent size and technology will usually sell from $11 to $20.

21.     It is exactly because of their higher sales value that G Pen branded products are targeted by counterfeiters.  The counterfeiters tarnish the G Pen brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G Pen Marks affixed to products made with inferior materials and technology, thereby leading to significant illegitimate profits by store owners such as the Defendants in the instant case.

22.     In essence,  the Defendants misleads consumers by selling in their stores low grade products that free ride on the goodwill of the G Pen brand, and in turn, the Defendants reap substantial ill-gotten profits.  The Defendants' offering for sale counterfeit G Pen products contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to GS and irreparable harm to the G Pen brand's image and reputation.

23.     The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic G Pen products when stores selling counterfeit products are selling and competing in the same market with products which appear to be identical and at half

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

the price at which authentic products can be sold.

24.     Unfortunately, the current U.S. marketplace is saturated with counterfeit products – just like those RUTUL PATEL through his store, RAW SMOKE & TOBACCO, is offering for sale. As such, GS has been forced to scrupulously enforce its rights in order to protect the G Pen Marks against infringement. By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the G Pen Marks and/or counterfeit G Pen branded products nationwide. GS has had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace.

**Defendants' Counterfeiting and Infringing Activities**

25.     The Defendants operate a retail smoke shop through which they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

26.     The Defendants have offered for sale counterfeit G Pen products with G Pen Marks and without the consent of GS. In fact, they have offered counterfeit vaporizers bearing imitations of the G Pen Marks that were not made or authorized by GS. These are hereinafter the "Counterfeit Goods."

27.     Nevertheless, the Defendants have offered for sale in commerce the Counterfeit Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Marks (hereinafter the "Infringing Marks"), detailed above.

28.     The Defendants have, without consent of GS, offered for sale in their store, the Counterfeit Goods bearing the Infringming Marks, bearing the likeness of the G Pen Marks in the United States.

29.     The marks affixed to the Counterfeit Goods that the Defendants have offered for

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

sale are spurious marks which are identical with, or substantially indistinguishable from, the G Pen Marks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

30.    Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

31.    In the ongoing investigation into the sales of counterfeit products bearing the fake G Pen Marks, RAW SMOKE & TOBACCO offered for sale Counterfeit Goods.

32.    Specifically, on October 8, 2024, GS's investigator attended RAW SMOKE & TOBACCO's location, which was open to the public, and observed that it had at least one vaporizer which appeared to display the G Pen Marks. The investigator purchased a vaporizer with G Pen Marks affixed to it, from RAW SMOKE & TOBACCO, for a cost of $27.50, charged to the account of GS's investigator. Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed the Infringing Marks.

33.    Attached hereto as Exhibit "B" are the photographic examples of the Defendants' use of the Infringing Marks, taken from the Counterfeit Good.  As seen in the pictures, the Counterfeit Good contained: four of GS's marks on it: a.    U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963; and U.S. Trademark Registration Number 4,466,586. The Defendants' use of the Counterfeit Marks is substantially indistinguishable, if not identical, to GS's Marks.

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

Counterfeit Product offered by Defendants





THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222



**1. GETTING STARTED**
Ensure the following components are included:

1 Rechargeable G Battery™
1 G Pen Herbal Tank™
1 G Pen Wired USB Charger™
1 G Tool™
1 G Brush

**2. TURNING ON/OFF**
The G Pen Herbal Vaporizer is engineered with a lock-ing mechanism to prevent accidental or inadvertent usage. To lock/unlock, press the button 5 times. The LED light on the G Battery will blink 3 times to ac-knowledge this feature.

**3. LOADING**
Each G Pen Herbal Vaporizer is comprised of a G Pen Herbal Tank and G Battery. While the vaporizer is OFF/locked, unscrew the Mouthpiece to expose the heating element. Load desired amount of preferred herbal materials, and reattach tip.

**4. CHARGING**
Prior to use it is advised that the G Battery is charged in full. Connect the Wired USB Charger to the thread-ing of the G Battery. Connect the other end into any compatible USB port. Once connected the G Battery will blink 3 times indicating a successful charge is in process. Charging is complete when the red light on the G Pen Wired USB illuminates green. Please allow 3-4 hours of charge time for the initial 3 charging cycles.



11

GS's Registered Trademarks

# G PEN



# GRENCO SCIENCE



34.     RUTUL PATEL authorized, directed, and/or participated in RAW SMOKE & TOBACCO's offer for sale, in commerce, of the Counterfeit Goods. RUTUL PATEL's acts were a moving, active, and conscious force behind RAW SMOKE & TOBACCO's infringement of the G Pen Trademarks.

12

35.     The Defendants' use of the counterfeit G Pen Trademarks began after the registration of the G Pen Trademarks.  Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the G Pen Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

36.     The unauthorized offering for sale by RAW SMOKE & TOBACCO, under the authority, direction and/or participation of RUTUL PATEL, of the Counterfeit Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

37.     The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the G Pen Trademarks, which are owned by GS.

38.     RAW SMOKE & TOBACCO's use of the G Pen Marks includes displaying to offer for sale unauthorized copies of Counterfeit G Pen branded products.  RAW SMOKE & TOBACCO's offering to sell the G Pen counterfeit products, bearing the Infringing Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

39.     RAW SMOKE & TOBACCO used images and names identical to or confusingly similar to the G Pen Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks.  The Infringing Marks affixed to the Counterfeit Goods that RAW SMOKE & TOBACCO has offered for sale are confusingly identical or similar to the G Pen Marks that GS affixes to its Gravity Infusers. The Counterfeit Goods and GS's goods are both gravity infusers, and marks identical or confusingly similar to the G Pen marks appear on the Infringing Goods.

40.     The Defendants' Infringing Goods travel in identical channels of trade and are sold

13

to identical consumers as G Pen genuine goods.

41. The vaporizers that RAW SMOKE & TOBACCO sells and offers for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine G Pen brand products.

42. RAW SMOKE & TOBACCO has offered for sale its water pipes under the Infringing Marks through its retail convenience store.

43. RAW SMOKE & TOBACCO has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Marks through point of purchase displays.

44. RAW SMOKE & TOBACCO and RUTUL PATEL's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by RAW SMOKE & TOBACCO, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by RAW SMOKE & TOBACCO originate from, and are associated or affiliated with, or otherwise authorized by GS.

45. RAW SMOKE & TOBACCO and RUTUL PATEL's acts are willful with the deliberate intent to trade on the goodwill of the G Pen Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers to RAW SMOKE & TOBACCO. The Defendants, as merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry. It is readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold by their shop and have acted with at least willful blindness as to GS's intellectual property rights in the G Pen Marks. Here, the Defendants sold counterfeit products, at 27.50, far less than typical retail value. In addition, the counterfeit on display was not a color GS made, the

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

Snoop Dog G Pen only ever came in navy blue. Further, GS no longer make Snoop Dog G Pens. There was also no bar code on the back of the packaging. A visual review of the product by the Defendants should have raised questions as to the authenticity of the product, and yet the Defendants either failed to inquire or noticed upon inquiry and simply sold it anyway. In essence, either the Defendants, engaged in willfully blind business tactics and in essence either knew or should have known of the product's lack of authenticity.

46.    RAW SMOKE & TOBACCO and RUTUL PATEL's acts have caused damage and immediate irreparable harm to GS, the G Pen Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

47.    As a proximate result of the unfair advantage accruing to RUTUL PATEL and RAW SMOKE & TOBACCO's business from deceptively trading on GS's advertising, sales, and consumer recognition, RUTUL PATEL and RAW SMOKE & TOBACCO have made profits and gains to which they are not in law or equity entitled.

48.    The injuries and damages sustained by GS has been directly and proximately caused by RAW SMOKE & TOBACCO and RUTUL PATEL's offers for sale of their goods bearing infringements or counterfeits of the G Pen Marks.

49.    Through such business activities, RUTUL PATEL and  RAW SMOKE & TOBACCO  purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of Illinois, and in doing so, have knowingly harmed GS.

50.    Furthermore, the sale and distribution of Counterfeit Goods by RAW SMOKE & TOBACCO has infringed upon the above-identified federally registered trademarks.

51.    The spurious marks or designations used by RAW SMOKE & TOBACCO in

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

interstate commerce are identical with, or substantially indistinguishable from, the G Pen Marks on goods covered by the G Pen Marks. Such use therefore creates a false affiliation between RAW SMOKE & TOBACCO, GS, and the G Pen Marks.

52.     Due to the actions of RUTUL PATEL and RAW SMOKE & TOBACCO, GS has been forced to retain the undersigned counsel and pay the costs of bringing an action forward. RUTUL PATEL and  RAW SMOKE & TOBACCO should be responsible for paying GS's reasonable costs of the action.

53.     RUTUL PATEL and RAW SMOKE & TOBACCO's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

54.     Moreover,  RAW SMOKE & TOBACCO and RUTUL PATEL's wrongful acts will continue unless enjoined by the Court.  Accordingly, RUTUL PATEL and RAW SMOKE & TOBACCO must be restrained and enjoined from any further counterfeiting or infringement of the G Pen Marks.

**Count One**
**Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114**

55.     The Plaintiff avers Paragraphs 1 through 54, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

56.     GS owns the federally registered G Pen Trademarks, as set forth in more detail in the foregoing paragraphs.

57.     The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the G Pen Trademarks on the same goods covered by the G Pen Trademarks.

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

58.     The Defendants' unauthorized use of counterfeit marks of the registered G Pen Trademarks on and in connection with the Defendants' offer(s) for sale in commerce is likely to cause confusion or mistake in the minds of the public.

59.     The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the G Pen Trademarks.

60.     The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

61.     The Defendants' actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

62.     The Defendants' use in commerce of the counterfeit G Pen Trademarks has resulted in lost profits and business to GS, which are difficult to determine.  The Defendants have also, by selling counterfeit G Pen products, caused considerable damage to the goodwill of the G Pen Trademarks, and diminished the brand recognition of the G Pen Trademarks by introducing counterfeit products into the marketplace.

63.     By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**Count Two**
**Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)**

64.     The Plaintiff avers Paragraphs 1 through 54, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

THE TICKTIN LAW GROUP
875 NORTH MICHIGAN AVENUE, 31ST FLOOR CHICAGO, IL 60611
TELEPHONE: (561) 232-2222

65.     GS owns the federally registered G Pen Trademarks, as set forth in more detail in the foregoing paragraphs.

66.     The Defendants, without authorization from GS, has used in commerce spurious designations that are identical with, or substantially indistinguishable from, the G Pen Trademarks on the same goods covered by the G Pen Trademarks.

67.     The Defendants' unauthorized use of counterfeit marks of the registered G Pen Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

68.     The Defendants' unauthorized use in commerce of the G Pen Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     The Defendants' conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the G Pen Trademarks.

70.     The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the G Pen Trademarks.  Moreover, it will continue to cause damage GS and confuse the public unless enjoined by this Court.

71.     GS has no adequate remedy at law.

72.     By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## **PRAYER FOR RELIEF**

18

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the following additional relief against the Defendants, as follows:

1. With regard to Plaintiff's Count I for trademark infringement:

   a. Statutory damages under 15 U.S.C. § 1117(c);

   b. Costs of suit; and

   c. Joint and several liability for RUTUL PATEL, and other officers, and directors, for the knowing participation in the counterfeiting activities of RAW SMOKE & TOBACCO INC;

   d. Find this case to be an exceptional case;

   e. Award GS HOLISTIC LLC its reasonable attorneys' fees and costs.

2. With regard to Plaintiff's Count II for false designation and unfair competition:

   a. Disgorgement of profits under 15 U.S.C. § 1117(a);

   b. Treble damages under 15 U.S.C. § 1117(b);

   c. Costs of suit; and

   d. Joint and several liability for RUTUL PATEL, and other officers, and directors, for the knowing participation in the counterfeiting activities of RAW SMOKE & TOBACCO INC.

3. Entry of an order requiring Defendants to pay prejudgment interest according to law.

4. Preliminarily and permanently enjoining RAW SMOKE & TOBACCO INC and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

   a. The import, export, making, manufacture, reproduction, assembly, use,

19

acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit Stündenglass product identified in the Complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

5.    Pursuant to 15 U.S.C. § 1116(a), directing RAW SMOKE & TOBACCO INC to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which RAW SMOKE & TOBACCO INC has complied with the injunction;

6.    For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

7.    For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in the RAW SMOKE & TOBACCO INC's possession, which rightfully belong to the Plaintiff;

8.    Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G Pen Trademarks.

9.    For any other and further relief as the Court may deem just and equitable.

**Demand for Jury Trial**

20

The Plaintiff demands a Jury Trial on all issues so triable.

Date: October 4, 2024

Respectfully submitted,

*/s/ Ryan S. Fojo*
Ryan S. Fojo
IL Bar # 6305940
The Ticktin Law Group
875 North Michigan Ave
31st Floor
Chicago, IL 60611
Serv605@LegalBrains.com
Serv549@LegalBrains.com
Telephone: 561-232-2222

*Attorney for the Plaintiff*